DECISION AND JOURNAL ENTRY
Sherri Cechowski appeals the decision rendered in the Summit County Court of Common Pleas granting summary judgment to her former employer, Goodwill Industries of Akron, Ohio, Inc. ("Goodwill"). We reverse.
Cechowski was hired by Goodwill in May 1990 as a part-time sales associate at Goodwill's Brunswick store. Within one year, Cechowski was working full-time. In 1991, Cechowski was promoted to assistant manager of the Brunswick store. Cechowski's immediate supervisor was Lu Ann Butscher. Terry McCarty, a male, was sales director in charge of three retail stores, one of which was the Brunswick store. McCarty visited the Brunswick store about once a week, and telephoned the store at other times.
McCarty was supervised by Ruth Meeks, vice president in charge of retail operations for Goodwill. Richard Thatcher was personnel manager for Goodwill. Fred Sonnett was president of Goodwill. Gregory Bean and Foster Buchtel were members of Goodwill's Board of Directors. Each makes an appearance in the discussion infra.
On July 22, 1992, Cechowski began a medical leave associated with the birth of her child. While on leave, Cechowski was informed that she could not return to her old position.
Cechowski filed a complaint against Goodwill on July 13, 1994, alleging wrongful discharge, negligent infliction of emotional distress, and negligent retention of employees. She amended this complaint on September 18, 1995, adding allegations of sexual harassment, breach of contract. Goodwill filed its motion for summary judgment on January 24, 1996. Cechowski responded. The trial court granted Goodwill's motion on May 2, 1997. Cechowski timely appealed, assigning six errors.[1]
 I
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. Perkins v.Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is proper if:
(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party.
State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. Doubts must be resolved in favor of the nonmoving party. Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, 686. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment. Lorain Cty. Bd. of Commrs. v.United States Fire Ins. Co. (1992), 81 Ohio App.3d 263, 267. We will, therefore, review the matter de novo. Pennsylvania Lumbermens Ins.Corp. v. Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 743; Tylerv. Kelley (1994), 98 Ohio App.3d 444, 446.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio, citing its previous decision in Mitseff v. Wheeler (1988),38 Ohio St.3d 112, outlined the respective burdens upon the moving and nonmoving parties in the context of a Civ.R. 56 motion for summary judgment:
[W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot simply discharge its initial burden under Civ.R. 56 simply by making conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. The foregoing principles have been firmly established in Ohio jurisprudence for some time.
Dresher, supra, 75 Ohio St.3d at 293-294. (Emphasis sic.) The court then went on to limit the third paragraph of the syllabus of Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, to conform to the above requirements. Id.
These principles were reaffirmed in Vahila v. Hall (1997),77 Ohio St.3d 421, 429-430:
As explained in Mitseff (and more recently in Dresher) bare allegations by the moving party are simply not enough. The party seeking summary judgment always bears the initial responsibility of [1] informing the court of the basis for the motion and [2] identifying those portions of the record which support his or her claim. Then, and only then, is the initial burden discharged, requiring the nonmoving party to comply with Civ.R. 56(E). (Emphasis sic.) Thus, it is apparent that unless the movant fulfills both prongs of the Dresher duty, the motion for summary judgmentmust be denied. The moving party is required to state the basis for his motion and then point to "pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any" which support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. Unless and until that burden is met, the nonmovant is under no corresponding duty, and the motion must be denied. "[A] movant's conclusory assertions of no evidence against the nonmovant is [sic.] no longer good enough in Ohio." Am.Express Travel Related Serv. Co., Inc. v. Mandilakis (1996),111 Ohio App.3d 160, 164. Further, assuming the movant satisfies his burden, the nonmovant is then permitted to present or point out evidence that satisfies his reciprocal burden to demonstrate the existence of a material factual dispute.
We note that, in this case, Goodwill initially moved for summary judgment prior to the Dresher decision. Dresher was decided on March 6, 1996. The trial court ruled on the motions for summary judgment on May 2, 1996. Dresher was applicable to the decision at issue on appeal, particularly in light of the Supreme Court's holding that its "principles have been firmly established in Ohio jurisprudence for some time."Dresher, 75 Ohio St.3d at 294. With respect to each assigned error, Goodwill failed to fulfill its initial duty under Dresher. Therefore, we sustain all six of Cechowski's assignments of error and reverse the trial court's grant of summary judgment to Goodwill.
 II.
Cechowski's first assignment of error states:
The trial court erred in granting summary judgment with regard to appellant's first claim regarding hostile environment sex harassment.
Cechowski's first claim alleged that Goodwill "created and/or tolerated a work environment hostile to women in general, including [Cechowski]" and that Goodwill "failed and refused to ameliorate these conditions despite numerous notices to [Goodwill] of improper conduct by Terry McCarty and other supervisors." Cechowski pled a "hostile work environment" sexual harassment claim under R.C. 4112.02(A).
In its motion for summary judgment, Goodwill asserted that no evidence exists to support Cechowski's claim that she toiled in a hostile work environment. The only evidence Goodwill cites is a passage from Cechowski's deposition:
Q. How would you characterize your working relationship with Terry [McCarty]?
A. Can I say nothing?
Q. Sure.
A. Cause he didn't care to deal with me.
Q. So he just didn't interact with you?
A. No.
Goodwill argued that Cechowski's characterization of her work relationship with McCarty negates any possible claim of "hostile work environment harassment," because Cechowski thereby tacitly admitted that McCarty "barely spoke to her and he certainly never touched her or made sexual advances or comments to [her]."
R.C. 4112(A) states:
It shall be an unlawful discriminatory practice:
(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
R.C. 4112(A) proscribes harassment on the basis of sex. Delaney v.Skyline Lodge, Inc. (1994), 95 Ohio App.3d 264, 269.[2] Drawing upon the statute itself, the administrative gloss, and federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e etseq., Title 42, U.S. Code, the First District Court of Appeals set forth the following as elements of a claim brought under R.C. 4112(A) against an employer for "hostile work environment" sexual harassment:
(1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability.
Id. at 270, citing Harris v. Forklift Systems, Inc. (1993), 510 U.S. ___, 126 L.Ed.2d 295. "Under the doctrine of respondeat superior, an employer is liable for sexual harassment by a supervisor if the employer knew or should have known of its occurrence, and failed to take remedial action." Delaney, supra. The evidence cited by Goodwill is directed at the second and fourth of the Delaney elements, and specifically pertains to Cechowski's alleged subjection to a hostile work environment.
To interpret the elements of a hostile work environment claim, Ohio courts draw on federal courts' interpretations of Title VII. LittleForest Med. Ctr. Of Akron v. Ohio Civ. Rights Comm. (1991),61 Ohio St.3d 607, 609-610, certiorari denied (1992), 503 U.S. 906,117 L.Ed.2d 491. A unanimous United States Supreme Court found that Title VII is not violated under a hostile work environment theory unless (1) the victim subjectively perceives the environment to be abusive, and (2) the conduct actually alters the conditions of the victim's employment.Harris v. Forklift Systems, Inc. (1993), 510 U.S. ___, 126 L.Ed.2d 295,302. Writing for the Court, Justice O'Connor elaborated on the conceptual foundations for a hostile work environment claim:
When the workplace is permeated with discriminatory intimidation, ridicule, and insult, Title VII is violated. * * *
This is not, and by its nature cannot be, a mathematically precise test. * * * But we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. * * * [W]hile psychological harm, like any other relevant factor, may be taken into account, no single factor is required.
Id.
From the Court's discussion, it is clear that the unit of analysis for a hostile work environment claim is the work environment as a whole, and not the relationship between the victim and a particular harasser. Whether a work environment is hostile requires consideration of "all the circumstances," of which the Court provides a non-exclusive list. The inquiry is inherently fact-intensive. See Davis v. Black (1991),70 Ohio App.3d 359, 366 (liability of employer for hostile work environment sexual harassment ordinarily presents a question of fact).
Evidence tending to show a defendant's harassment of other women working alongside a plaintiff is directly relevant to whether the defendant created a hostile working environment. Drawl v. ClevelandOrthopedic Ctr. (1995), 107 Ohio App.3d 272, 278. "Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive." Vinson v. Taylor (D.C. Cir. 1985), 753 F.2d 141, 146, reversal affirmed (1986), 477 U.S. 57, 91 L.Ed.2d 49; see, also, Daemi v. Church'sFried Chicken (C.A. 10, 1991), 931 F.2d 1379, 1385, n. 2; and Stingleyv. Arizona (D.Ariz. 1992), 796 F.Supp. 424, 428.
As stated above, under Dresher, the moving party is required to state the basis for its motion and then point to Civ.R. 56(C) evidence that supports the motion. Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. Hence, Goodwill's summary assertion that "no evidence exists to support [this] claim" is unsatisfactory. The only evidence that Goodwill did cite — the alleged non-interaction of McCarty with Cechowski — did not undermine Cechowski's claim of hostile work environment sexual harassment. A supervisor's refusal to interact with a worker he supervises could, conceivably, itself constitute evidence of sexual harassment under a hostile work environment theory. However, case law applying R.C. 4112.02(A) and its federal analogue establishes that one may prove a claim of hostile work environment without proving that that one was harassed by behavior directed at him or her by a harasser.[3] Therefore, a claimant's admission that he or she was not the personal target of harassment[4]
would not necessarily negate a claim that a work environment was hostile.
Because Goodwill failed to point to Civ.R. 56(C) evidence to support its motion, Goodwill was not entitled to summary judgment. We sustain Cechowski's first assignment of error.
 III.
Cechowski's second assignment of error states:
The trial court erred in grating [sic.] summary judgment on appellant's second claim for wrongful discharge in violation of public policy based on sex harassment/discrimination.
In the second claim of her complaint, Cechowski states that "Defendants wrongfully discharged her in violation of public policy based on sexual harassment/discrimination." "In Ohio, a cause of action may be brought for wrongful discharge in violation of public policy based on sexual harassment/discrimination." Collins v. Rizkana (1995), 73 Ohio St.3d 65, syllabus. This public policy is reflected in R.C. 4112.02(A). Id. at 74. In its motion for summary judgment, Goodwill discussed together Cechowski's first two claims, the statutory claim brought under R.C.4112.02(A)(2), and this common law tort claim brought for violation of the public policy reflected in R.C. 4112.02. For the same reasons presented in our discussion of Cechowski's first assignment of error, we sustain her second assignment of error.
 IV.
Cechowski's third assignment of error states:
The trial court erred in granting summary judgment on appellant's claim alleging wrongful discharge in violation of public policy and the pregnancy discrimination act.
In the third claim of her complaint, Cechowski claimed that Goodwill wrongfully discharged her because of her pregnancy, and thereby violated Ohio public policy. Goodwill does not dispute that such a policy exists. As noted supra, the Ohio Supreme Court has held that a cause of action may be brought for wrongful discharge in violation of public policy based on sexual discrimination. Collins v. Rizkana (1995), 73 Ohio St.3d 65, at the syllabus. A principal foundation for the Court's analysis was that the public policy against sexual discrimination was manifested in a "statute or administrative regulation," Id. at 69, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self-Interest Lie? (1989), 58 U. Cin. L.Rev. 397, 398-399. The Court cited R.C. 4112.02, which provides:
It shall be an unlawful discriminatory practice:
(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment[.]
Id. at 72. Indeed, the Court stated that "[i]t is clear that a civil rights statute prohibiting employment discrimination on the basis of sex may provide the necessary expression of public policy on which to premise a cause of action for wrongful discharge based on sexual harassment/discrimination." Id.
Under Ohio statute and administrative regulation, pregnancy discrimination is a form of sexual discrimination. R.C. 4112.01(B) provides, in pertinent part, that:
For the purposes of divisions (A) to (F) of section 4112.02 of the Revised Code, the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical condition.
Ohio Admin. Code 4112-5-05-(G) provides that:
(2) Where termination of an employee who is temporarily disabled due to pregnancy is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination.
In view of the clear statutory and regulatory pronouncements that pregnancy discrimination is a form of sexual discrimination, we conclude that the Ohio Supreme Court's endorsement of a cause of action based upon violation of the public policy against sexual discrimination extends to pregnancy discrimination.
In Frank v. Toledo Hosp. (1992), 84 Ohio App.3d 610, 615-16, the court drew upon federal Title VII case law and R.C. 4112.02 case law to set forth the proof requirements for a plaintiff claiming pregnancy discrimination:
[T]he appellant * * * must first prove by a preponderance of the evidence a prima facie case of disparate treatment. If appellant proves aprima facie case, the burden then shifts to appellees to provide the necessary legal justification for the differentiation. Should appellees carry their burden, appellant must then be given an opportunity to prove that the stated justification is merely a pretext. * * * [A]ppellant [must] first establish a prima facie violation of R.C. 4112.02 by showing that: (1) she was pregnant; (2) she was discharged; and (3) a comparable non-protected employee was treated better.
(Footnote omitted.)
In its memorandum in support of its motion for summary judgment, Goodwill did not dispute whether Cechowski could establish a prima facie
case. Goodwill maintained that it could show a legal justification for discharging Cechowski, stating the following:
In the instant case, the decision to lay off the Plaintiff was based on the Defendant's belief that Plaintiff had no intention of returning to work. (See attached excerpts from McCarty's deposition attached hereto as Exhibit "A."). There was no discriminatory motive or intent on Goodwill's part.
Having advanced a legitimate non-discriminatory reason for Plaintiff's layoff, the burden shifts to the Plaintiff to produce competent evidence that Plaintiff has been the victim of intentional discrimination. In other words, Plaintiff must demonstrate that the business reason advanced by Goodwill is a cover-up for an unlawful discriminatory reason.
In the excerpts from McCarty's deposition cited by Goodwill, McCarty described a discussion with [personnel director] Thatcher concerning the latter's opinion about whether Goodwill could fill Cechowski's position while she was on maternity leave "because she took an extended leave that was not planned and we did not plan for it." McCarty testified that Thatcher responded affirmatively, and added:
[A]ccording to Mr. Thatcher, it was deemed a necessity to replace her while she was off with the understanding that she would be offered the first available position when she came back and was able to work.
The excerpts from McCarty's deposition cited by Goodwill do not demonstrate what Goodwill pretends they do. They do not present a legal justification for Goodwill's discharge of Cechowski. At most, McCarty's testimony is evidence of Goodwill's pre-discharge response to Cechowski's leave-taking. By relying only on McCarty's evidence, Goodwill fell far short of carrying its initial burden under Dresher, i.e., to present Rule 56(C) evidence demonstrating the absence of an issue of material fact on the essential element(s) of Cechowski's claim. Cechowski's third assignment of error is sustained.
 V.
Cechowski's fourth assignment of error states:
Trial cour [sic.] erred in granting summary judgment on appellant's fourht [sic.] claim for negligent hire and retention.
The fourth claim of Cechowski's amended complaint alleges that Goodwill negligently hired and retained employees or supervisors, or both, who sexually harassed employees. In Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486, 493, the Ohio Supreme Court held that an action against an employer for negligently hiring and retaining employees may be predicated upon allegations of workplace sexual harassment by an employee:
An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees[.] * * * [W]here an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing.
In its memorandum in support of its motion for summary judgment, Goodwill argues that Cechowski admitted that she was not sexually harassed when, in her deposition, Cechowski said: "he [McCarty] didn't care to deal with me * * * he'd rather go to Jean."[5] As discussed above in connection with Cechowski's first assignment of error, this deposition testimony does not negate Cechowski's claim that she was sexually harassed. Therefore, Goodwill has failed to carry its initialDresher burden to present Rule 56(C) evidence demonstrating the absence of an issue of material fact on the essential element(s) of the nonmoving party's claims. Cechowski's fourth assignment of error is sustained.
 VI.
Cechowski's fifth assignment of error states:
The trial court erred by granting summary judgment on appellant's sixth claim for negligent and/or intentional infliction of emotional distress.
Cechowski alleged that Goodwill negligently or intentionally caused her to suffer emotional distress. The Ohio Supreme Court summarized the tort of negligent infliction of emotional harm in Binns v. Fredenhall (1987),32 Ohio St.3d 244, 245:
Ohio law has traditionally permitted recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury. Recently, * * * this court recognized a cause of action for negligent infliction of serious emotional distress without a contemporaneous physical injury for plaintiffs who are directly involved in an accident. * * * [W]e extended this new cause of action to persons who observe an accident as bystanders but who are not directly involved in the accident.
(Citations omitted.)
In its memorandum in support of its motion for summary judgment, Goodwill asserted that "[p]laintiff can establish no set of facts allowing her to recover for the negligent infliction of severe and emotional distress." Goodwill cited no Civ.R. 56(C) evidence in support of its motion. As such, Goodwill failed to carry its initial Dresher
burden to present Rule 56(C) evidence demonstrating the absence of an issue of material fact on the essential element(s) of the Cechowski's claim for negligent infliction of emotional distress.
In Shambaugh v. Beverly Ent. Ohio Inc. (August 24, 1994), Summit App. No. 16568, unreported, at 6, citing Pyle v. Pyle (1983),11 Ohio App.3d 31, 34, this court set forth the elements of a claim for intentional infliction of emotional distress:
1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;
2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as `utterly intolerable in a civilized community,' Restatement of Torts 2d (1965), 73 Section 46, comment d;
3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and
4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it." Restatement of Torts 2d 77, Section 46, comment j.
In its memorandum in support of its motion for summary judgment, Goodwill asserted that "[a]s a matter of law, the facts as alleged by plaintiff do not amount to outrageous or extreme conduct." Goodwill cited no Civ.R. 56(C) evidence in support of its motion. Goodwill has failed to carry its initial Dresher burden to present Rule 56(C) evidence demonstrating the absence of an issue of material fact on the essential element(s) of Cechowski's claim for intentional infliction of emotional distress. Since Goodwill failed to carry its initial burden underDresher with respect to either claim, Cechowski's fifth assignment of error is sustained.
 VII.
Cechowski's sixth assignment of error states:
The trial cour (sic.) erred in granting summary judgment on appellant's seventh claim for spoliation.
Cechowski claimed that Foster Buchtel and Gregory Bean, who at the time were members of Goodwill's board of directors, and other unnamed officers, employees, and agents of Goodwill, despoiled evidence by destroying documents they had a duty to preserve. The elements of a claim for interference or destruction of evidence were set forth by the Ohio Supreme Court in Smith v. Howard Johnson Co., Inc. (1993),67 Ohio St.3d 28, 29:
(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]
In its memorandum in support of its motion for summary judgment, Goodwill assumed that the documents allegedly destroyed were allegations submitted to the Goodwill Board of Directors by a former Goodwill employee, Luba Hill. In her response to Goodwill's motion for summary judgment, Cechowski stated that the Hill documents and other written complaints made by other employees concerning McCarty's alleged harassment and abuse were destroyed by Goodwill in June, 1994, or a month prior to the filing of Cechowski's initial complaint against Goodwill.
In support of its motion, Goodwill made three arguments. First, Goodwill argued that "it is undisputed that those documents are in the possession of [Cechowski's] counsel," referring the court to a letter from Cechowski's counsel to Goodwill's counsel, which it attached to its motion. Since that letter is not evidence we may consider under Civ.R. 56, Goodwill's argument on this point does not help it meet its initial burden under Dresher.
Goodwill's second argument was that both Bean and Buchtel testified "that their personal copies of these documents were discarded and that no connection was made by them between Luba Hill's allegations and any of the plaintiff's now pursuing [sic.] claims against Goodwill." In his affidavit, Bean stated that as Chairman of the Board of Trustees he was involved in an "administrative review" of Hill's allegations against Goodwill. Bean further stated that he discarded all written information that pertained to Goodwill shortly after his service as Chairman ended in March 1994; and that these discarded writings included the Hill documents. Bean also stated that he made no connection between Hill's claims and the lawsuit or lawsuits filed by clients represented by Cechowski's attorneys prior to his discarding of the writings.
In his deposition, Buchtel responded in the following manner to a question concerning whether he turned over to [Goodwill president] Sonnett materials relating to sexual harassment allegation made by "five to six" women:
All the materials, copies of all the materials were in the agency possession. I had my own set and by a strange coincidence, about a month before — it was about a week before I got my first call on any of this going on, I think it was from you, I'm not sure, I was doing my cleaning of the office and I shredded everything. And I shredded it because I didn't want to give it out accidentally to people that come to work for me.
Our initial inquiry is whether any of this Civ.R. 56 evidence demonstrates the absence of an issue of material fact to any element essential to Cechowski's claim of spoliation. Bean disclaims any connection between his destruction of the Hill documents and lawsuits filed prior to March, 1994. Since Cechowski's lawsuit was filed in July of 1994, Bean's statement does not negate the spoliation element of wilfulness. Buchtel's testimony apparently does not even concern the Hill documents. Thus, Cechowski's spoliation claim with respect to the Hill documents is not negated by the Civ.R. 56 evidence cited by Goodwill. Moreover, Goodwill fails to demonstrate how Buchtel's testimony about shredding documents concerning the allegations of former employees other than Hill negates any element of Cechowski's spoliation claim.
Goodwill's third argument referred to journal entries issued by courts of common pleas in other suits involving the Hill documents. These courts allegedly excluded the Hill documents from the respective cases on the grounds that the Hill documents were not relevant. We cannot fathom exactly how these journal entries demonstrate the absence of an issue of material fact on any element of Cechowski's claim.
Because Goodwill has failed to fulfill its initial duty under Dresher
to identify those portions of the record that support its claim that there is an absence of material fact on some element essential to Cechowski's claim for spoliation, we sustain Cechowski's sixth assignment of error. We reverse the award of summary judgment, and remand this case to the trial court for proceedings consistent with this opinion.
Judgment reversed and case remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
Quillin, P.J. Concurs.
[1] Cechowski's brief checked in at 30 pages, which is the length limit set forth in Loc.R. 13. In her brief, Cechowski "adopt[ed] as her Statement of Facts, the Facts as set forth in her Plaintiff's Response to Motions for Summary Judgment." Because it did not itself set forth the facts relevant to the issues presented, Cechowski's brief did not conform to App.R. 16(A)(6) and Loc.R. 13. Although we did not apply sanctions to Cechowski's brief or appeal, we emphasize that we do not favor attempts to circumvent rules promulgated by this court.
[2] R.C. 4112.99 created a private cause of action for violations of R.C. 4112. Elek v. Huntington Natl. Bank (1991), 60 Ohio St.3d 135, 136.
[3] In her complaint, Cechowski claimed that Goodwill had notice of "improper conduct by Terry McCarty and other supervisors." (Emphasis added.) The fact that Cechowski may have interacted with McCarty indicates nothing about her interactions with other supervisors whose conduct she alleged was improper.
[4] By no means do we conclude that the quoted passage established that Cechowski admitted to never having been harassed. Cechowski correctly notes that she responded in the negative ("No") to a question phased in the negative ("So he just didn't interact with you?"). Thus, the literal implication of her response is that she did interact with McCarty. The ambiguity of the passage cited by Goodwill is enhanced by the lines immediately succeeding the quoted passage in the Cechowski deposition transcript, which read as follows:
Q. Did he ever speak to you?
A. Oh, yes.
[5] The only other Civ.R. 56(C) evidence Goodwill cited was Cechowski's characterization of McCarty as an inconsistent and bad manager.