[Cite as *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920924.

Decided May 18, 1994.

266

*Tobias, Kraus & Torchia* and *Willard L. Harvey,* for appellees.

*John J. Finnigan, Jr.,* for appellant.

*Per Curiam.*

This case arose from the sexual harassment of the four plaintiffs-appellees, Phyllis Delaney, Karen Watts, Brenda Lackey, and Marlene Scheidt, waitresses for defendant-appellant, Skyline Lodge, Inc., by Peter Boucher, a manager of Edward's, a restaurant owned by appellant.

The appellees claim that in 1990, Boucher began telling offensive jokes and making remarks of a sexual nature in their presence. Boucher told the jokes in the public and work areas of the restaurant. Boucher made off-color remarks in front of customers while placing his arm around the appellees and drawing them close to him. He referred to the female waitresses as "cunts" and "bitches." He made disparaging, unwelcome remarks about Delaney's breasts in public. He told Scheidt that she could go home early and "give her husband some," that he bet she got "laid" last night and that he presumed she was good in bed.

Despite appellees' entreaties, Boucher did not stop his offensive remarks and conduct. On November 15, 1990, appellees complained to Gary Bradford, appel-

lant's operations manager, raising concerns over the abusive sexual harassment by Boucher.

Bradford spoke to Boucher. He informed Boucher not to tell dirty jokes to anyone who might be offended by them. Five days later, Bradford told appellees their allegations were untrue and to drop their allegations if they wished to remain employed. Bradford fired Delaney the same day.

Boucher continued to tell sexually explicit jokes in appellees' presence, though not directly to them. He lowered his pants while staring directly at Scheidt. Moreover, two of the appellees were threatened by Boucher. He declared that he had a gun in his car and would not hesitate to use it "if anybody screws me and gets in my way." Appellees complained to appellant's controller that Boucher was a pervert from "A to Z."

By mid-December 1990, all the appellees either had been fired or had left appellant's employ.

In response to these incidents, the four appellees brought this action against appellant for firing them in violation of public policy, for sexual harassment in violation of R.C. Chapter 4112, and for defamation.

On September 9, 1992, the jury answered special interrogatories and rendered a verdict in favor of appellant on all the wrongful discharge claims, except as to appellee Delaney. The jury also found in appellant's favor on all the defamation claims, returned a verdict for all the appellees on their sexual harassment claims, and awarded damages for sexual harassment.

The trial court then entered judgment for the appellees including compensatory damages for lost pay and emotional distress in the total amount of $82,000.[1] The court also awarded punitive damages in the amount of $126,000.[2] This timely appeal followed the trial court's denial of appellant's motion for judgment notwithstanding the verdict or, in the alternative, for remittitur or new trial.

In three assignments of error, appellant questions the judgments against it on the claims of sexual harassment. Appellant first asserts that the trial court erred by denying summary judgment in its favor on appellee Watts's claim of sexual harassment in violation of R.C. 4112.02. Appellant contends that, under the standard for summary judgment in sexual harassment cases, identified in *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 492–493, 575 N.E.2d 428, 433–434, there is no genuine issue of material fact as to whether Boucher's sexual

---

1. The award was specified as follows: appellee Delaney received $33,000; Watts received $20,000; Lackey received $16,000; and Scheidt received $16,000.

2. Appellee Delaney received $33,000; Watts $20,000; Lackey $28,000; and Scheidt received $45,000.

harassment continued after appellant received notice of Boucher's "past history of sexually harassing behavior," on or about November 15, 1990. Nonetheless, appellant claims, the trial court erroneously denied its motion for summary judgment without elaboration.

■ Summary judgment is appropriate where, with the evidence construed most strongly in favor of the party against whom the motion is directed, no genuine issue of material fact remains to be litigated which could establish the existence of an element essential to the nonmoving party's claim or defense. *Celotex v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (adopted by the Supreme Court of Ohio in *Wing v. Anchor Media, Ltd. of Texas* [1991], 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus); Civ.R. 56.

In *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 210, the Supreme Court provided guidance for a determination of which facts are material in a given case, stating that:

"[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

As an initial matter, we must identify the proper governing substantive law. Only then can we know which, if any, factual disputes are material.

It is uncontroverted that appellees' claims for sexual harassment were brought pursuant to R.C. Chapter 4112. In *Kerans*, the plaintiffs' claims were not. There, the Supreme Court, based upon strong public policy grounds, recognized a common-law right to sue an employer for sexual harassment. *Kerans*, 61 Ohio St.3d at 495, 575 N.E.2d at 435. Under R.C. Chapter 4112, however, harassment on the basis of sex is statutorily proscribed.[3] R.C. 4112.02(A) states:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate

---

**3.** In *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 573 N.E.2d 1056, the Supreme Court of Ohio found that R.C. 4112.99 created a private cause of action for violations of R.C. Chapter 4112. The court stated that:

"[T]he clear and unambiguous language of the statute provides that a civil action for damages or injunctive relief is afforded by R.C. 4112.99 as an available remedy. Moreover, the section specifically states that the civil action is available to remedy any violation of this chapter [*i.e.*, R.C. Chapter 4112]." *Id.* at 136, 573 N.E.2d at 1058.

Pursuant to R.C. 4112.99, an employer is subject to a civil action for back pay, compensatory and punitive damages, injunctive relief, or any other appropriate relief.

against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

To determine the essential elements of a claim of sexual harassment pursuant to R.C. 4112.02(A), we look to the statute itself, to the administrative gloss,[4] and to the federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609–610, 575 N.E.2d 1164, 1167, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128 (Title VII evidentiary formula generally applicable to cases involving violations of R.C. Chapter 4112); *Meritor Sav. Bank, FSB v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49.[5]

Therefore, we adopt the following as the elements of a claim, brought under R.C. Chapter 4112, against an employer for "hostile work environment" sexual harassment: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of *respondeat superior* liability. *Harris v. Forklift System, Inc.* (1993), —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295; *Rabidue v. Osceola Refining Co.* (C.A.6, 1986), 805 F.2d 611. Under the doctrine of *respondeat superior*, an employer is liable for sexual harassment by a supervisor if the employer knew or should have known of its occurrence, and failed to take remedial action. See *Scandinavian*

---

**4.** Ohio Adm.Code 4112–5–05(J) provides that:

"(1) * * * Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when:

"* * *

"(c) Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

"* * *

"(3) Applying general agency principles, an employer * * * is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence."

**5.** In *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 622 N.E.2d 1130, this court specifically adopted the Title VII reasoning for use in analyzing claims of disparate treatment brought pursuant to R.C. Chapter 4112. Accord *Scandinavian Health Spa, Inc. v. Ohio Civil Rights Comm.* (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169 (Title VII standard adopted for "hostile environment" sexual harassment claims); *Barney v. Chi Chi's, Inc.* (1992), 84 Ohio App.3d 40, 616 N.E.2d 269 (Title VII standard adopted in affirming the entry of summary judgment in an action for sexual and racial harassment).

*Health Spa, Inc. v. Ohio Civil Rights Comm.* (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169.

In considering appellant's assignment of error, then, this court must determine if there remains a genuine issue of material fact as to whether appellee Watts was subjected to continued sexual harassment in the form of unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct after she complained to appellant.

■ Our review of the evidentiary materials, available pursuant to Civ.R. 56(C), with the evidence construed most strongly in favor of the nonmoving party, reveals that genuine issues of material fact remain as to whether sexual harassment continued after November 15, 1990, in light of the evidence that Boucher continued to tell sexually based jokes and dropped his pants while boasting of his genital size. See *Davis v. Black* (1991), 70 Ohio App.3d 359, 366, 591 N.E.2d 11, 16 (liability of employer for "hostile work environment" sexual harassment ordinarily presents a question of fact). Accordingly, appellant's first assignment of error is not well taken.

In its fourth assignment of error, appellant claims the trial court erred in overruling its motion for directed verdict on all the appellees' claims of sexual harassment. Appellant contends, as it did in its first assignment of error, that no sexual harassment occurred after it was put on notice of the complaints against Boucher and had reprimanded him.

■ A directed verdict should only be granted where the trial court, without weighing the evidence or the credibility of the witnesses and after construing the evidence most strongly in favor of the nonmoving party, determines reasonable minds could come to but one conclusion on the evidence submitted and that conclusion is adverse to such party. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. This requires the court to determine only whether there exists any evidence of substantial probative value in support of the nonmoving party's claim. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 69, 23 O.O.3d 115, 116–117, 430 N.E.2d 935, 938. If there is evidence which, if believed, would permit reasonable minds to come to different conclusions, the issue must be submitted to the jury.

■ We overrule appellant's fourth assignment of error as there was evidence of substantial probative value adduced at trial which, if believed, would permit reasonable minds to conclude that the female appellees' male supervisor made offensive and unwelcome sexual advances and requests for sexual favors, and engaged in other verbal and physical conduct of a sexual nature during working hours, at Edward's restaurant, and when appellees complained, the conduct continued in the form of sexual jokes told by the supervisor during working hours

in the presence of the appellees and in the lowering of the supervisor's pants in front of appellee Scheidt and two other waitresses.

In three assignments of error, appellant next contests the monetary damages awarded in this case. Appellant challenges the appropriateness of the award in its second assignment of error. The court, appellant claims, was barred from awarding money damages to the appellees as the appellees never specified the amount of compensatory or punitive damages sought. Appellant, relying upon Civ.R. 54(C) in support of its argument, contends that appellees' failure to amend their complaints to specify the amount of damages sought bars them from recovering any damages at all.

Civ.R. 54(C) provides, in pertinent part:

"[A] demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless [the claimant] amends [the] demand not later than seven days before the commencement of the trial. Additional service of process is not necessary upon such amendment."

Generally, therefore, an award of damages cannot exceed the prayer for damages that was in effect on the sixth day prior to trial. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704; *Cincinnati Art Galleries v. Fatzie* (1990), 70 Ohio App.3d 696, 591 N.E.2d 1336. One of the justifications requiring specification of the demand is notice to the defendant of his potential liability exposure. *Bishop v. Grdina, supra.* Rigid application of the rule in this case would necessitate the entry of zero dollars in damages for the appellees.

In 1993 the Supreme Court of Ohio, however, in finding R.C. 2309.01 unconstitutional, declared that:

"Th[e] additional requirement [of R.C. 2309.01] has led to harsh results in that plaintiffs who specify no actual damages in the original complaint, in an attempt to comply with R.C. 2309.01, face a judgment for zero damages when they do not later comply with the R.C. 2309.01 requirement that they amend the complaint. Regardless of whether these situations are framed as failure to comply with Civ.R. 54(C) or as noncompliance with R.C. 2309.01, they are all glaring examples of the inherent unfairness which results from the R.C. 2309.01 requirement that plaintiff specify no damages in the original complaint when those damages are in excess of twenty-five thousand dollars." *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 224, 611 N.E.2d 789, 791.[6]

---

6. Other grounds for relieving a plaintiff from the application of Civ.R. 54(C) include when defendant's failure to provide complete, accurate discovery in a timely fashion denies amendment of the damages prayer, *Smolik v. Andrews Custom Builders, Inc.* (1990), 62 Ohio App.3d 872, 577 N.E.2d 726, and when the procedural statute upon which plaintiff relies to exclude a

In *Walsh v. Jagadeesan,* one of the three cases consolidated into *Rockey,* the court identified and remedied one example of inherent unfairness by excusing plaintiffs who failed to amend their complaint and specify a dollar amount of damages sought before trial pursuant to Civ.R. 54(C). The defendant in *Walsh* failed to raise a protest until after the jury had been charged. The Supreme Court held that the failure to raise the matter at the appropriate time during the trial constituted waiver. *Rockey,* 66 Ohio St.3d at 226, 611 N.E.2d at 792.

In *Bentley v. Smallwood* (June 25, 1993), Vinton App. No. 471, unreported, 1993 WL 393645, the Court of Appeals for the Fourth District, relying on *Rockey,* held that, as in the case *sub judice,* the defendant's failure to raise the lack of any specific monetary demand until the filing of a motion for judgment notwithstanding the verdict similarly constituted waiver.

Our review. of the record here reveals that appellees' complaints sought unspecified damage amounts for lost pay, medical expenses, and punitive damages. The joint pretrial statement filed with the court, and signed by counsel for appellant and appellees, itemized the lost wages of appellees Lackey and Scheidt. Extensive evidence was heard at trial regarding the amount of lost wages and emotional distress, without objection.

Despite making two motions for directed verdict, filing its proposed jury instructions numbers eight through twelve dealing with calculation of damages, and posing no relevant objection to the jury instructions on both compensatory and punitive damages, the appellant waited until it filed its Civ.R. 50(B) motion for judgment notwithstanding the verdict to complain of the appellees' failure to amend their complaints. We hold that appellant's failure to raise the lack of any specific monetary demand, despite adequate notice of claims of compensatory and punitive damages, until its motion for judgment notwithstanding the verdict constituted waiver. The second assignment of error is overruled.

 Appellant's third assignment of error also assails the entry of punitive damages by the trial court. Over appellant's objection, the jury was permitted to decide not only whether punitive damages were merited, but also the amount of those damages. Appellant claims that this is error of sufficient magnitude to mandate reversal of the trial court's judgment. We disagree.

R.C. 2315.21(C)(2) provides that:

---

demand for a specific amount of monetary damages in her complaint is declared unconstitutional by the trial court after plaintiff has presented an opening statement, and the trial court denies plaintiff's motion for leave to amend the complaint to include a specific demand for damages, on the ground that the motion is untimely under Civ.R. 54(C), *Washington v. Whalen* (Sept. 1, 1993), Hamilton App. No. C-920145, unreported, 1993 WL 332295.

"In a tort action * * * if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of those damages shall be determined by the court."

Here the amount of the damages was erroneously submitted to the jury in contravention of the statute. See *Bazali v. Winkle, Chevrolet, Olds, Pontiac, Inc.* (July 23, 1992), Paulding App. No. 11-91-7, unreported, 1992 WL 180085. Nevertheless, we find no prejudice to the appellant, as the trial court, in response to appellant's motion for judgment notwithstanding the verdict, adopted the amount of damages decided by the jury as reasonable and appropriate. As the amount of damages was ultimately determined by the court, no prejudice arose. The third assignment of error is without merit.

 In the fifth assignment of error, appellant claims the trial court erred in denying its motion for a directed verdict on appellees' claim for punitive damages, alleging there was no evidence presented to justify awarding punitive damages.

R.C. 2315.21, governing the recovery of punitive damages, reads:

"(B) * * * punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless * * *:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate."

Where there is evidence that appellees raised concerns over abusive sexual harassment by Boucher with Gary Bradford, appellant's operations manager, that Bradford then told appellees their allegations were untrue and to drop their allegations if they wished to remain employed despite his later opinion that the acts complained of could have happened, that Boucher continued to engage in sexually harassing conduct, and that appellees subsequently complained to appellant's controller without result, a jury could reasonably come to differing conclusions as to the adequacy of appellant's response to the allegations and as to whether appellant ratified the acts of Boucher.

Moreover, in light of these facts and other testimony pertaining to appellees' travails at Edward's restaurant, we conclude that sufficient evidence was adduced to permit reasonable minds to conclude that appellant abandoned appellees to their tormenter. *Strother v. Hutchinson, supra.* Therefore, the denial of appellant's motion for directed verdict was proper. The fifth assignment of error is overruled.

 Appellant next claims it is entitled to a new trial based upon the trial court's overruling of its motion for mistrial. Appellant moved for a mistrial

following a statement by appellees' counsel, in rebuttal closing argument, that appellee Delaney "won" her case before the National Labor Relations Board. As no evidence was presented on this matter at trial, appellant claims this statement invited the jury to reach its decision on matters outside the evidence adduced at trial, *i.e.*, because Delaney prevailed at the NLRB, she was entitled to prevail below, too. See *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St.3d 346, 15 OBR 468, 474 N.E.2d 291.

Appellant's sixth assignment of error is not well taken. Appellant is correct that no evidence of the NLRB proceedings was admitted at trial. However, the transcript of the proceedings records the statement by appellees' counsel as:

"[I]nstead what [the police officer] told Mrs. Delaney was that it was a civil matter, to go to the NLRB, and she did, and she went to the NLRB."

Appellant's counsel objected and moved for a mistrial, claiming the remark was prejudicial and misleading. This record hardly mandates the conclusion that Delaney prevailed at the NLRB as appellant urges.

Moreover, any prejudice from this remark was minimal in light of the following questions posed by appellant's counsel at the voir dire of the prospective jurors:

"And in the case of one of the plaintiffs, the [NLRB] found a violation of the National Labor Relations Act.

"Now, do you all understand that what may be a violation of the National Labor Relations laws may not necessarily be a violation of the civil laws that you're going to deal with in this lawsuit * * *."

This argument is feckless. While remarking on matters outside the evidence presented at trial is not proper argument, the negligible effect of the remarks here does not mandate a new trial.

Appellant next, in its seventh assignment of error, asserts that the jury's verdicts finding appellant liable to appellees for sexual harassment, and finding that appellee Delaney was wrongfully discharged for complaining of and refusing to participate in check-padding conducted by Boucher, are against the manifest weight of the evidence. This claim is without merit.

A judgment supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

[14, 15] A review of the record reveals ample evidence from which the trier of fact could have found each element of both claims. Testimony was elicited indicating appellee Delaney was fired only days after informing appellant that she

refused to participate in padding checks, and that Boucher then threatened to replace her "with young women * * * [who will] do exactly as they are told." Appellant adduced evidence of Delaney's fighting with employees and talking with customers about company matters which tended to contradict those claims. Appellees similarly adduced evidence of sexual harassment by appellant's employee Boucher both before and after they complained of these acts on November 15, 1990.

As some competent, credible evidence was presented at trial, the resolution of these factual disputes was properly left to the jury sitting as the trier of fact, as in "either civil or criminal cases, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Accordingly, the seventh assignment of error is overruled.

[16] In its eighth assignment of error, appellant claims the trial court erred in denying its motion for a directed verdict on appellee Delaney's claim for wrongful discharge in violation of public policy. It asserts that because, "[a]bsent statutory authority, there is no common-law basis in tort for [this] claim," the jury ought not to have been permitted to decide this issue, appellee having failed to properly pursue a claim under R.C. 4113.52, the Ohio whistleblower statute. *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 584 N.E.2d 729, syllabus. This assignment must fail.

In *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, the Ohio Supreme Court recognized a public-policy exception to the employment-at-will doctrine where an employee is discharged for a reason that is prohibited by statute. The plaintiff may pursue a tort claim under the exception discussed in *Greeley* only when the violated statute does not provide an adequate civil remedy. *Provens v. Stark Cty. Bd. Of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 594 N.E.2d 959.[7] To proceed, however, the plaintiff must aver violations of a specific statute. *Tulloh v. Goodyear Atomic Corp., supra.*

In her complaint, Delaney claimed her discharge was in violation of the Ohio whistleblower statute, R.C. 4113.52. The joint trial statement, signed by both parties, and the evidence adduced and argued at trial, however, indicated her

---

7. See *Nienaber v. Hyper Shoppes, Inc.* (Apr. 13, 1994), Hamilton App. C–930175, unreported, 1994 WL 123687 (no cause of action under *Greeley* where the sole statute relied upon by the plaintiff for her wrongful discharge claim afforded a diverse and full civil remedy); but, see, *Haynes v. Zoological Soc. of Cincinnati* (Dec. 22, 1993), Hamilton App. No. C–910598, unreported, 1993 WL 538977 (where plaintiff left with a limited remedy that failed to provide relief for her claims, plaintiff entitled to the extra protection afforded by the public policy exception).

discharge was in violation of the policies set forth in R.C. 2921.03 and 2921.04, proscribing intimidating witnesses of criminal activity.

As the intimidation statutes do not provide for a civil remedy, appellant's motion for a directed verdict on appellee Delaney's claim was properly denied. *Provens v. Stark Cty. Bd. Of Mental Retardation & Developmental Disabilities, supra.* The eighth assignment of error is overruled.

■ In its ninth assignment of error, appellant claims the trial court erred in admitting, over its objection, the testimony of appellee Lackey that she had read a handwritten statement given to the Harrison Police Department by Shelly James, appellant's head waitress, in which James admitted that Boucher had padded customer checks. Appellant claims this statement was inadmissible as hearsay within hearsay. Evid.R. 805.

This assignment is overruled as Lackey's declaration concerned matters properly considered nonhearsay, and thus not subject to the exclusionary effect of Evid.R. 802. There is sufficient foundation in the record to conclude that James's statement was an admission by a party opponent because it related a statement offered against a party which was made by its servant concerning a matter within the scope of her employment, during the existence of the employment relationship. Evid.R. 801(D)(2)(d).

Having overruled all of appellant's assignments of error, we, therefore, affirm the judgment of the trial court.

*Judgment affirmed.*

KLUSMEIER, P.J., GORMAN and M.B. BETTMAN, JJ., concur.