OPINION
Plaintiff-appellant Darlene Malloy ("appellant") appeals from the trial court's order denying her motion for a new trial after the jury returned a verdict for defendant-appellee City of Cleveland ("the City") and against appellant in the underlying sexual harassment case. Appellant assigns the following errors for our review:
 I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL BECAUSE THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL BECAUSE THE COURT IMPROPERLY LIMITED HER CROSS-EXAMINATION OF DEFENDANT-APPELLEE'S WITNESSES WITH REGARD TO THEIR RESPONSE TO PLAINTIFF-APPELLANT'S CONCERNS FOR HER SAFETY.
 III. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL BECAUSE THE COURT IMPROPERLY LIMITED HER CROSS-EXAMINATION OF DEFENDANT-APPELLEES WITNESSES REGARDING A SUBSEQUENT COMPLAINT OF SEXUAL HARASSMENT.
 IV. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL BECAUSE THE COURT GAVE A CONFUSING AND IMPROPER JURY INSTRUCTION REGARDING RESPONDEAT SUPERIOR LIABILITY.
Finding appellant's assignments of error to lack merit, we affirm the judgment of the trial court.
 I.
On November 17, 1981, the City hired appellant as a custodial worker at Cleveland Hopkins International Airport. Appellant became a custodial worker supervisor in 1987. On March 9, 1992, appellant was transferred to the City's airport security office.
At the time, the City's airport security office consisted of three employees: Dale Wiechelman and Andrew Hriz were Airport Security Coordinators, and appellant was the office manager.
On April 8, 1994. appellant went to the City's personnel administrator, Mary Czaplicki, to complain about inappropriate comments made by George Brkich. Brkich, who was employed by the City as the Department of Port Control's Chief Engineering 
Construction Inspector, would go to the security office on occasion to obtain security badges for construction contractors. Although Brkich supervised three employees in his office, he did not have any authority over appellant or her co-workers in the security office.
According to appellant, Brkich verbally harassed her several times since her transfer to the security office. Specifically, appellant claimed that Brkich repeatedly asked her to show him her "tits" The final inappropriate comment made by Brkich to appellant occurred on April 7, 1994. However, according to Ms. Czaplicki, appellant did not inform her of Brkich's harassing comments until April 8, 1994.
Ms. Czaplicki immediately informed the City's Equal Employment Opportunity Manager, Miguel Torres, about appellant's complaints against Brkich. Mr. Torres interviewed appellant and Brkich, and two witnesses to Brkich's conduct on April 7, 1994, Wiechelman and Mr. Hriz. Brkich admitted to making inappropriate references to appellant's breasts.
Mr. Torres concluded his investigation and, on April 11, 1994, sent his report to Barry Withers, the City's Director of Personnel and Human Resources. On April 19. 1994, Brkich received a three-day suspension without pay for violating the City's sexual harassment policy.
On April 19, 1994, appellant went to Ms. Czaplicki to complain about the conduct of Wiechelman. According to appellant, this was the first time appellant complained to her about Wiechelman. Ms. Czaplicki requested that appellant reduce her complaints to writing and, on April 25, 1994, appellant submitted a written statement to Ms. Czaplicki. Appellant's written statement listed twelve allegations against Wiechelman,[1] including:
 1. Dale [Wiechelman] would throw paper clips, rubber bands, pencils, pens, paper. He would always laugh. (STEVEN KOVACH WITNESSED DALE THROWING A RUBBER BAND AT ME).
* * *
 7. Dale never reported to work in his uniform. He would always use the office as locker room. When he wanted to change into his uniform he would TELL me to leave. If I was working he would TELL me to stop and leave. If I did not leave he would start to unbutton his shirt or unzip his pants right in front of me. * * *
* * *
 11. Dale received a post card from his wife. This post card was Chicago Bares, with different poses of women's buttocks in bathing suit bottoms. Mr. Sheehan has seen the post card in the office and told Dale to remove it from his calendar. Dale never removed the post card from his calendar until the incident that took place on 4-8-94. If Mr. Sheehan would walk into the office Dale would remove the post card and put it in the top drawer of the desk.
Ms. Czaplicki contacted Mr. Torres, who commenced an investigation on April 26, 1994. During the investigation, Wiechelman admitted to throwing paper clips and rubber bands at appellant, and to having a postcard of women in bikinis in the security office. Although Wiechelman admitted to changing clothes in the security office, he denied that he ever changed his clothes in appellant's presence. At trial, Wiechelman also admitted to sending appellant an envelope with Monopoly Money and condom wrappers as a "joke." Wiechelman denied appellant's other allegations against him.
Mr. Torres concluded his investigation and forwarded his recommendation to Mr. Withers on April 29, 1994. On May 19, 1994, Wiechelman received a written reprimand for violating the City's sexual harassment policy.
Effective June 6, 1994, appellant was temporarily transferred out of the security office for a month. Appellant returned to the security office on July 6, 1994, where she continued to work without further harassment by Wiechelman or Brkich. On March 18, 1997, appellant went on extended medical leave, pending approval of an application for disability retirement. Appellant never returned to her job.
On June 20, 1996, appellant filed a lawsuit against the City, Wiechelman, and Brkich. On August 12, 1996, appellant filed an amended complaint. In her amended complaint, appellant raised five causes of action: (1) a sexual harassment claim under R.C.4112.02; (2) a discriminatory and retaliatory conduct claim under R.C. Chapter 4112; (3) claims of sexual harassment and retaliation under Ohio common law; (4) intentional infliction of emotional distress; and (5) invasion of privacy.
On June 9, 1997, Brkich and Wiechelman filed a motion for summary judgment. The City also filed a motion for summary judgment on the same date. The trial court granted summary judgment in favor of the defendants on appellant's retaliation claims, but denied summary judgment on appellant's other claims.
On September 3, 1997, trial commenced. During the course of trial, appellant voluntarily dismissed her claims against Wiechelman and Brkich. The case went to the jury on appellant's claims of sexual harassment and intentional infliction of emotional distress against the City. On September 19, 1997, the jury returned a verdict in favor of the City and against appellant on her remaining claims. The jury verdict was journalized by the trial court on September 23, 1997.
On October 7, 1997, appellant filed a motion to set aside the verdict and for a new trial. In a journal entry filed on December 2, 1997, the trial court denied appellant's motion for a new trial. Therefrom, appellant filed the instant appeal.
 II.
In her first assignment of error, appellant claims the trial court erred in denying her motion for a new trial because the jury's verdict was against the manifest weight of the evidence.
Civ.R. 59(A)(6) permits a trial court to order a new trial if the judgment is not sustained by the weight of the evidence. When considering a Civ.R. 59(A)(6) motion, the trial court must weigh the evidence and pass on the credibility of the witnesses. The trial court's consideration of this weight and credibility is not in the substantially unlimited sense employed by the jury but in a more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the weight of the evidence. Rohde v. Farmer (1970),23 Ohio St.2d 82, paragraph three of the syllabus. A trial judge should abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. Bland v. Graves (1993), 85 Ohio App.3d 644, 651.
The granting of a motion for a new trial rests within the sound discretion of the trial court. That determination will not be disturbed upon appeal unless there has been an abuse of that discretion. Pena v. Northeast Ohio Emergency Affiliates, Inc.
(1995), 108 Ohio App.3d 96, 103. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial court which was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. A reviewing court should view the evidence favorably to the trial court's action rather than the jury's verdict. Jenkins v.Krieger (1981), 67 Ohio St.2d 314, 320. The trial court's decision will be affirmed upon appeal unless it is clearly wrong and without legal basis. Dawson v. MetroHealth Ctr. (1995),104 Ohio App.3d 654, 656.
Appellant claims she was entitled to a new trial on her sexual harassment claims. Appellant's first cause of action was a sexual harassment claim brought under R.C. 4112.02. R.C. 4112.02 (A) states: It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
R.C. 4112.02(A) 's comprehensive prohibition against employment discrimination has been interpreted to include proscriptions against sexual harassment. See Helmick v. Cincinnati WordProcessing, Inc. (1989), 45 Ohio St.3d 131, 135.
To determine the essential elements of a claim of hostile environment sexual harassment pursuant to R.C. 4112.02 (A), Ohio courts have looked to federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code. See Delaney v. Skyline Lodge, Inc. (1994), 95 Ohio App.3d 264,270; Little Forest Med. Ctr. of Akron v. Ohio Civ.Rights Comm. (1991), 61 Ohio St.3d 607, 609-610.
To establish a claim brought under R.C. Chapter 4112 against an employer for hostile work environment sexual harassment, a plaintiff must establish: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex or race; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability. SeeDelaney, 95 Ohio App.3d at 270, citing Harris v. Forklift System,Inc. (1993), 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295.
In order to be actionable, a hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." See Bell v. CuyahogaCommunity College (Aug. 13, 1998), Cuyahoga App. No. 73245, unreported, citing Faragher v. City of Boca Raton (1998), ___ U.S. ___, 118 S.Ct. 2275, 141 L.Ed.2d 662. In Faragher, the Supreme Court stated:
 We directed courts to determine whether an environment is sufficiently hostile and abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." * * *
 * * * We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment * * *
Id., 118 S.Ct. at 2283-2289, quoting Harris, 114 S.Ct. at 371.
Appellant also asserted a common law sexual harassment claim in her complaint. The common law tort of sexual harassment was created by the Supreme Court of Ohio in Kerans v. Porter PaintCo. (1991), 61 Ohio St.3d 486. In Kerans, the Court held:
 Where a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business.
Kerans, at paragraph two of the syllabus.
Although Kerans created the common law tort of sexual harassment, it did not clearly define the elements of this cause of action. Subsequent courts interpreting and applying Kerans
have adopted the elements of statutory sexual harassment listed above. See Barney, supra; Thompson v. Western Auto Supply Co.
(May 8, 1996), Delaware App. No. 95CA-E-05-030, unreported. Moreover, to establish a common law harassment claim, a plaintiff must also point to evidence in the record suggesting a past history of sexual harassment about which the employer knew or should have known. Kerans, at paragraph two of the syllabus.
In the instant case, Brkich admitted to referring to appellants breast in the context of a "bet." Wiechelman admitted to the following conduct: (1) throwing paper clips, rubber bands, and paper wads at appellant; (2) having a postcard of women in bikinis in the security office; (3) mailing an envelope with monopoly money and condom wrappers to appellant; and (4) changing clothes in the security office (although never in appellant's presence). We note that appellant also testified about a litany of other offenses; however, these additional claims were unsubstantiated. Therefore, it was within the jury's function, which includes the weighing of evidence and the credibility of witnesses, to reject appellant's version of events.
Although the admitted conduct of Wiechelman and Brkich clearly constituted sexual harassment, it was within the jury's province to find that this harassment did not unreasonably interfere with appellant's work performance or create a sufficiently hostile and abusive work environment to be actionable under either R.C.4112.02 or Ohio common law. The subject harassment was not frequent or physically threatening; at worst, the conduct of Wiechelman and Brkich was merely offensive. Moreover, the conduct complained of did not appear to unreasonably interfere with appellant's work performance.[2]
In response to an interrogatory, the jury found that appellant was not subject to a hostile work environment. The trial court was correct in refusing to encroach on the jury's fact-finding function; the evidence at trial supports the finding that the subject harassment was not extreme enough to amount to a change in the terms and conditions of appellant's employment.
Therefore, we find that the trial court did not abuse its discretion in denying appellants motion for a new trial. Appellant's first assignment of error is overruled.
 III.
In her second assignment of error, appellant argues the trial court abused its discretion in excluding evidence of two incidents which occurred after the subject sexual harassment: (1) on February 8, 1995, appellant allegedly received a threatening telephone call at work;[3] and (2) on September 29, 1995, appellant's vehicle was damaged by a hit-skip driver while parked in an employees' parking lot at the airport. Therefore, appellant claims that she was entitled to a new trial pursuant to Civ.R. 59(A) (9).
A trial court may grant a new trial when it finds that it committed an error of law during the trial. Civ.R. 59(A) (9). However, the trial court may only grant a new trial if the challenged action was legally erroneous and was also prejudicial.Sanders v. Mt. Sinai Hosp. (1985), 21 Ohio App.3d 249, 252.
During her tenure in the security office, appellant voiced concerns for her safety to the personnel administrator, Mary Czaplicki, on several occasions. At trial, Ms. Czaplicki testified that her office "looked into" each safety concern raised by appellant.
Lieutenant Kathleen O'Malley was the officer in charge of the Cleveland Police Department's airport unit. Appellant testified that Lt. O'Malley told her "never to come to this office for help." Lt. O'Malley denied making this comment. In addition, Lt. O'Malley testified that a police officer was dispatched whenever appellant called with a "customer disturbance."
Appellant insists that the testimony of Ms. Czaplicki and Lt. O'Malley was false because the City and the police department made "absolutely no investigation whatsoever" of the threatening telephone call or the parking lot incident.[4] Appellant claims the excluded evidence contradicted the testimony of Ms. Czaplicki and Officer O'Malley, and therefore was relevant pursuant to Evid.R. 611(B). In addition, appellant argues the excluded evidence was "relevant and probative to demonstrate that Plaintiff's fear for her safety was reasonable and that she had reason to believe that the City would not take action to protect her."
Appellant correctly points out that cross-examination is to be permitted on all relevant matters and matters affecting credibility. See Evid.R. 611(B). "However, the trial judge retains wide latitude to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness safety, or interrogation that is repetitive or only marginally relevant." State v. Jenkins
(Dec. 24. 1997), Cuyahoga App. No. 68961, unreported.
As this court noted in State v. Smith (Aug. 21. 1997), Cuyahoga App. No. 70855. unreported:
 A trial court enjoys broad discretion in the admission and exclusion of evidence. That decision will not be reversed absent a clear abuse of discretion which materially prejudices the objecting party. State v. McCray (1995), 103 Ohio App.3d 109.
In the instant case, we find that the excluded evidence had no relevance to the critical issues at trial, viz., whether appellants work environment was made sufficiently hostile and abusive by the conduct of Wiechelman and Brkich to constitute sexual harassment; whether Wiechelman was appellant's immediate (or successively higher) supervisor; and whether the City knew or should have known of the subject harassment and failed to take remedial action. Moreover, the evidence did not directly contradict the testimony of Ms. Czaplicki or Lt. O'Malley, and therefore had only marginal probative value to their credibility as witnesses.
On the other hand, the excluded evidence would have been highly prejudicial to the defendants. Although appellant had no evidence that Wiechelman, Brkich, and/or the City were in any way responsible for these two incidents, the natural effect of the excluded evidence would have inflamed the jury against the defendants and created sympathy for appellant.
Accordingly, we find that the trial court did not abuse its discretion in excluding the subject evidence. Appellant's second assignment of error is overruled.
 IV.
In her third assignment of error, appellant contends she was entitled to a new trial, pursuant to Civ.R. 59(A) (9), because the trial court abused its discretion in excluding evidence of a subsequent allegation of sexual harassment made against Brkich by Gina Marie Cerjan.[5]
Evid.R. 608(B) governs the use of evidence of specific instances of conduct, and provides, in pertinent part:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
* * *
(Emphasis added.)
As a general rule, evidence that a witness has committed other bad acts is not admissible. See Evid.R. 608(B); State v. Kamel
(1984), 12 Ohio St.3d 306, paragraph two of the syllabus. The theory underlying this rule is that other acts evidence generally has little or no relevance, but is highly prejudicial. See Statev. Mann (1985), 19 Ohio St.3d 34, 36. Evid.R. 608(B) permits such inquiry on cross-examination only if the trial court determines the conduct is clearly probative of the credibility of a witness. Evid.R. 608(B).
The trial court has discretion to determine whether the alleged prior conduct is "clearly probative to truthfulness or untruthfulness." Evid.R. 608(B); State v. Shields (1984), 15 Ohio App.3d 112,113. Moreover, even if other acts evidence is determined to be relevant to the credibility of a witness, it must still be excluded under Evid.R. 403(A), "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."[6]
Appellant contends that evidence of the allegation made by Ms. Cerjan was relevant to Brkich's credibility because Brkich testified that he took the City's sexual harassment policy "very seriously" after he was disciplined for the improper comments he made to appellant. In addition, appellant argues that the City "opened the door" to the disputed evidence when it claimed that there was no further misconduct on the part of Brkich after he was disciplined in April 1994. However, there was no evidence that Brkich actually engaged in the conduct alleged by Ms. Cerjan; the disputed evidence merely shows that an allegation was made against Brkich. Therefore, the excluded evidence was not "clearly probative" of Brkich's truthfulness or untruthfulness.
In light of the foregoing, we conclude the trial court did not abuse its discretion in excluding evidence of a subsequent allegation of sexual harassment made against Brkich. Accordingly, appellant's third assignment of error is overruled.
 V.
As for her final assignment of error, appellant contends she was entitled to a new trial, pursuant to Civ.R. 59(A) (9), because the trial court's jury instruction regarding respondeat superior liability was confusing and improper.
A trial court has discretion to use its own language to instruct the jury on legal principles. See Prjean v. Euclid Bd.of Educ. (1997), 119 Ohio App.3d 793, 804, citing Youssef v.Parr, Inc. (1990), 69 Ohio App.3d 679, 690. An appellate court's review of the giving or the failure to give a jury instruction is limited to determining whether the trial court abused its discretion, and, if so, whether that refusal was prejudicial. SeeJaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320,327. See also Cherovsky v. St. Luke's Hosp. of Cleveland
(Dec. 14, 1995), Cuyahoga App. No. 68326, unreported ("In order to obtain a reversal on the giving of an alleged improper instruction, a plaintiff must demonstrate both that the instructions, when considered as a whole, did not clearly and fairly express the law applicable to the case and, further, that substantial rights have been directly affected to plaintiff's prejudice.")
The trial court gave the following jury instruction onrespondeat superior liability:
 Ladies and gentlemen, an employer is responsible for its own acts of sexual harassment and those of its agents and supervisory employees. This responsibility exists regardless of whether the specific acts complained of were authorized or even prohibited [by the] employer.
 In making this determination you must consider whether the [C]ity of Cleveland knew or should have known of the sexual harassment and failed to implement prompt and appropriate corrective action.
Appellant asserts that this jury instruction did not clearly and fairly express the applicable law on respondeat superior
liability. Appellant contends that the City was automatically liable for sexual harassment by Wiechelman and Brkich, regardless of the City's knowledge or subsequent remedial actions, because they were supervisory employees. See Davis v. Black (1991),70 Ohio App.3d 359, 366. See also Burlington Indus., Inc. v. Ellerth
(1998), ___ U.S. ___ 18 S.Ct. 2257, 270, 141 L.Ed.2d 633, and its companion case, Faragher v. Boca Raton (1998), ___ U.S. ___,118 S.Ct. 2275, 2292, 141 L.Ed.2d 662 (Regardless of knowledge or subsequent remedial action, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.").
At trial, the City disputed appellants contention that Wiechelman and Brkich were supervisors, and presented sufficient evidence to support the conclusion that neither Wiechelman nor Brkich were supervisors with immediate (or successively higher) authority over appellant.
In order to merit a new trial, appellant has the burden to demonstrate prejudice arising from the allegedly improper and confusing jury instruction. We find that appellant was unable to demonstrate prejudice. As noted above, in response to an interrogatory, the jury found that appellant was not subject to a sexually hostile work environment. Because appellant failed to prove the fourth element of her sexual harassment claims, viz., the harassment had the purpose or effect of unreasonably interfering with the employees work performance or creating an intimidating, hostile, or offensive work environment, any error in instructing the jury on respondeat superior liability would have been moot. Accordingly, appellant's fourth assignment of error is overruled.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and ANNE L. KILBANE, J. CONCUR.
LEO M. SPELLACY, PRESIDING JUDGE
[1] We note that the vast majority of allegations by appellant against Wiechelman were unsubstantiated.
[2] We note that, by all indication, appellant continued to be a productive worker after the subject harassment until she went on extended medical leave on March 18. 1997. During this time period, appellant earned positive evaluations and commendations for her work performance.
[3] A male caller allegedly called appellant and stated, "You better drop the lawsuit or something is going to happen."
[4] This contention belies the excluded exhibits, which demonstrates the police did at least a cursory investigation of the two incidents, including interviewing appellant and examining her automobile.
[5] The excluded exhibits indicated that Ms. Cerjan, who worked at the airport but was not an employee of the City, told her union steward that Brkich made an inappropriate comment to her on or about September 28, 1994. However, Ms. Cerjan decided not to pursue a formal complaint against Brkich with the City.
[6] We note that evidence of Ms. Cerjan's allegation against Brkich, although unsubstantiated, would have been highly prejudicial. The natural effect of the excluded evidence would have inflamed the emotions of the jury against the defendants, especially Brkich.