JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant William Tamayo ("Tamayo") appeals the trial court's granting summary judgment in favor of the defendant-appellee Stack Container Services ("Stack"). We find no merit to the appeal and affirm.
 {¶ 2} Stack hired Tamayo as its Safety Director in January 1998. Stanley Jurcevic ("Jurcevic") was his immediate supervisor and Stack's primary owner.
 {¶ 3} Tamayo asserts that during the time he was employed by Stack, he was the subject of racial slurs and comments based upon his Mexican-American heritage. Tamayo claims he was referred to as "stupid Mexican," "Beaner," and "Taco Bill."
 {¶ 4} It is undisputed that in March 1999, Jurcevic referred to Tamayo as a "stupid Mexican" over a loudspeaker, and the entire staff heard the comment. When Tamayo tendered his resignation, Jurcevic apologized and conducted a staff meeting ("March 1999 meeting") to instruct employees that racial jokes, comments, and slurs would not be tolerated. The employees were also informed that violations of this policy would subject them to discipline, including possible termination.
 {¶ 5} Notwithstanding the policy enunciated at the staff meeting, Tamayo continued to be the subject of racial slurs and comments. In his deposition, submitted in support of summary judgment, Tamayo testified that some employees continued to refer to him with racial slurs and epithets on a daily basis. (Tamayo Depo. at 87). Tamayo also testified that although Jurcevic never used any racial slurs when he addressed Tamayo directly after the March 1999 meeting, he heard Jurcevic refer to him as "that Mexican" when speaking with another employee. (Tamayo Depo. at 70-71). Tamayo was the only Mexican-American working at Stack at that time.
 {¶ 6} Tamayo admitted that he never complained to Jurcevic about being subjected to any type of racial harassment after the March 1999 meeting. However, he complained to Harold Van Gundy, the Terminal Manager in the Columbus office, and to Stack's Chief Financial Officer, Jeff Schiano, that the situation had not changed after the March 1999 meeting.
 {¶ 7} Although Tamayo claims he continued to be the subject of racial slurs and epithets, he never advised Jurcevic that he was considering leaving Stack because the work conditions and environment were such that he could not complete his work or perform the functions and responsibilities of Safety Director. (Jurcevic Aff. ¶ 9). He admitted that, although he felt anxious and suffered from stomach aches, he never missed work as a result of harassment. (Tamayo Depo. at 72, 87).
 {¶ 8} In addition to racial harassment, Tamayo further asserts he was deprived of benefits extended to Caucasian employees. He was hospitalized with a brain tumor from late May until the end of June 2000. Although he last reported for work on May 24, 2000, Stack paid his salary through June 9, 2000, and also paid his health benefits until January 2001.
 {¶ 9} Tamayo claims he was treated differently from other employees because Stack continued to pay a Caucasian employee, Ron Linzovich, during several months' absence while he was being treated for cancer, whereas Tamayo was not paid during his entire absence. Jurcevic acknowledged that Linzovich received payments for several months while he was absent from work. (Jurcevic Depo. at 25-26).
 {¶ 10} Tamayo's doctor authorized his return to work in November 2000. Between the end of May and his doctor's release, Tamayo was never advised that he could not return to his job at Stack. When Jurcevic visited him in the hospital and spoke to him in July, Jurcevic told him that he should not worry about his job at Stack but should concentrate on his recovery. Tamayo understood that his job with Stack was secure.
 {¶ 11} However, Tamayo also testified that he left Stack because he was no longer being paid. (Tamayo Depo. at 36). Stack did not contest Tamayo's application for unemployment compensation and continued to pay his health benefits until January 2001, two months after he started a new job. Tamayo never advised Jurcevic or anyone at Stack that he would not be returning to work. Tamayo admitted that he did not know whether he could have returned to work at Stack because he never contacted Jurcevic in November 2000 to inquire about returning to work.
 {¶ 12} Stack filed a motion for summary judgment arguing there were no genuine issues of material fact to support Tamayo's claims of hostile work environment, discrimination, and constructive discharge. The trial court granted the motion, and Tamayo appeals, raising two assignments of error.
 Standard of Review {¶ 13} Appellate review of summary judgments is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105;Zemcik v. La Pine Truck Sales Equipment (1998),124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when(1) there is no genuine issue of material fact, (2) the movingparty is entitled to judgment as a matter of law, and (3)reasonable minds can come to but one conclusion and thatconclusion is adverse to the nonmoving party, said party beingentitled to have the evidence construed most strongly in hisfavor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,paragraph three of the syllabus. The party moving for summaryjudgment bears the burden of showing that there is no genuineissue of material fact and that it is entitled to judgment as amatter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,292-293."
 {¶ 14} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385. Doubts must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 Racial Discrimination {¶ 15} In his first assignment of error, Tamayo argues the trial court erred in granting summary judgment in favor of Stack because genuine issues of material fact exist as to each element of a prima facie case for discrimination under R.C. 4112.02(A).
 {¶ 16} R.C. 4112.02(A) provides:
"It shall be an unlawful discriminatory practice:
 For any employer, because of the race, color, religion, sex,national origin, handicap, age, or ancestry of any person, todischarge without just cause, to refuse to hire, or otherwise todiscriminate against that person with respect to hire, tenure,terms, conditions, or privileges of employment, or any matterdirectly or indirectly related to employment."
 {¶ 17} R.C. Chapter 4112, is Ohio's counterpart to Section 2000e, Title 42, U.S. Code ("Title VII"). Therefore, federal case law interpreting Title VII is generally applicable to cases brought under Chapter 4112. See, Genaro v. Cent. Transport,Inc. (1999), 84 Ohio St.3d 293, 295, 703 N.E.2d 782; Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981),66 Ohio St.2d 192, 196, 421 N.E.2d 128.
 {¶ 18} In Plumbers Steamfitters Joint ApprenticeshipCommt., supra, the Ohio Supreme Court recognized that McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 36 L.Ed.2d 668,93 S.Ct. 1817, sets forth the formula that courts should apply "to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Id. at 197.
 {¶ 19} In general, a prima facie case of racial discrimination under the McDonnell Douglas framework requires a plaintiff to establish that he or she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position either lost or not gained; and (4) that the position remained open or was filled by a person not of the protected class. McDonnell Douglas, supra, at 802.
 {¶ 20} The establishment of a prima facie case of discrimination under McDonnell Douglas creates a presumption that the employer unlawfully discriminated against the employee.Texas Dept. of Community Affairs v. Burdine (1981),450 U.S. 248, 254, 67 L.Ed.2d 207, 101 S.Ct. 1089. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that its actions regarding the plaintiff were taken based on legitimate nondiscriminatory reasons. Id. Thereafter, the burden again switches to the plaintiff, who must show that defendant's stated justification is in fact merely a pretext for unlawful discrimination. The ultimate burden of persuasion remains at all times with the plaintiff. Id.
 {¶ 21} In the instant case, the parties do not dispute that Tamayo, a Mexican-American, is a member of a protected class. There is also no dispute that Tamayo was qualified for the position of Stack's Safety Director. Thus, the first and third prongs of the McDonnell Douglas test are clearly established.
 {¶ 22} Tamayo asserts he suffered an adverse employment action when Stack denied him a benefit that a similarly situated employee, who was not a member of any protected class, had previously received. Specifically, Tamayo argues he suffered an adverse employment action when he did not receive payment for the time he was absent from work due to brain surgery while a Caucasian employee, Ron Linzovich, was paid during his absence from work due to cancer treatment.
 {¶ 23} In general, adverse employment actions must materially affect the plaintiff's terms and conditions of employment resulting in a job-related detriment. Peterson v. Buckeye SteelCasings (1999), 133 Ohio App.3d 715, 727, 729 N.E.2d 813. Examples of such actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities[.]"Peterson, supra, at 727, citing Crady v. Liberty Natl. Bank Trust Co. (C.A. 7, 1993), 993 F.2d 132, 136. Thus, differential treatment in the compensation of similarly situated employees during sick leave constitutes an adverse employment action, the proof of which would satisfy the second and fourth prongs of theMcDonnell Douglas test.
 {¶ 24} Here, it is undisputed that while Stack paid Tamayo for only a couple weeks of his sick leave, it continued to pay Ron Linzovich, a Caucasian employee, for several months he was absent, undergoing cancer treatments. Stack argues that Tamayo and Linzovich were not similarly situated employees because Linzovich, the Vice President of Operations, had been employed by Stack for five years and helped build the business, whereas Tamayo had been employed for only two years. Jurcevic also testified that he thought Linzovich's situation was different from Tamayo's because Linzovich was terminally ill.
 {¶ 25} Although the circumstances surrounding Tamayo and Linzovich's respective absences are clearly different, we do not find the differences so substantial as to justify a conclusion that these two employees were not similarly situated. Based on this evidence, a reasonable jury could conclude that Tamayo and Linzovich were similarly situated employees.
 {¶ 26} However, Stack produced unrefuted evidence that its financial condition allowed it to pay Linzovich during his absence but at the time Tamayo was diagnosed with a brain tumor, the company could not afford to pay Tamayo while he was not working. (Jurcevic Depo. at 23). Without any evidence to the contrary, we can only conclude that under these circumstances, Stack had a legitimate business justification for not paying Tamayo during his five-month absence.
 {¶ 27} Accordingly, the first assignment of error is overruled.
 Hostile Work Environment {¶ 28} In his second assignment of error, Tamayo argues the trial court erred in granting Stack's motion for summary judgment because there are genuine issues of material fact as to whether Stack allowed the hostile work environment to exist.
 {¶ 29} In determining the essential elements of a hostile work environment claim brought under R.C. 4112.02(A), Ohio courts have looked to federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e, et seq., Title 42, U.S. Code. See, Delaney v. Skyline Lodge, Inc. (1994),95 Ohio App.3d 264, 270, 642 N.E.2d 395; Little Forest Medical Ctr. ofAkron v. Ohio Civ. Rights Comm. (1991), 61 Ohio St.3d 607,609-610, 575 N.E.2d 1164.
 {¶ 30} To establish a claim brought under R.C. Chapter 4112 against an employer for hostile work environment harassment, a plaintiff must establish: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex or race; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability.Delaney, supra, at 270, citing Harris v. Forklift System, Inc.
(1993), 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295.
 {¶ 31} In order to be actionable, a hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Bell v. CuyahogaCommunity College (Aug. 13, 1998), Cuyahoga App. No. 73245, citing Faragher v. City of Boca Raton (1998), 524 U.S. 775,118 S.Ct. 2275, 141 L.Ed.2d 662. In Faragher, the Supreme Court stated:
"We directed courts to determine whether an environment issufficiently hostile and abusive by `looking at all thecircumstances,' including the `frequency of the discriminatoryconduct; its severity; whether it is physically threatening orhumiliating, or a mere offensive utterance; and whether itunreasonably interferes with an employee's work performance.'* * *
 * * We have made it clear that conduct must be extreme toamount to a change in the terms and conditions of employment* * *"
Id., 118 S.Ct. at 2283-2289, quoting Harris,114 S.Ct. at 371.
 {¶ 32} Stack admits that both Jurcevic and other employees used racial slurs and epithets when referring to Tamayo. Stack argues the racial comments were sporadic rather than pervasive and were more akin to jokes than degradation. Stack also argues that it took remedial action by holding the staff meeting in March 1999, at which time employees were advised that derogatory racial comments would not be tolerated. Stack further argues that Tamayo never complained about harassment after remedial action was taken.
 {¶ 33} However, Tamayo testified at his deposition that employees continued to make derogatory racial comments about his heritage on a daily basis even after they had been admonished at the staff meeting. (Tamayo Depo. at 87). He also testified that Jurcevic, his immediate supervisor and Stack's primary owner, continued to refer to him as "the Mexican," albeit not to his face. Although Tamayo never complained to Jurcevic about the harassment after the staff meeting, he complained to Harold Van Gundy, the Terminal Manager in the Columbus office, and to Stack's Chief Financial Officer, Jeff Schiano.
 {¶ 34} Stack argues that summary judgment was proper because no evidence was produced to show that the racial comments interfered with Tamayo's work performance. We agree.
 {¶ 35} Tamayo admitted that although the harassment caused him some anxiety, he never missed work as a result of the harassment. He further admitted that he did not inquire about returning to work at Stack once his doctor authorized his return. He claimed that he "did not think he could handle" the harassment mentally or emotionally after the strain of his surgery. (Tamayo Depo. at 38). Speculation that he might not be able to handle harassment after his surgery is not sufficient evidence to establish that the racial comments interfered with his work performance, especially when he had not worked at Stack for over five months.
 {¶ 36} Based on the foregoing evidence, Tamayo has failed to establish that the harassment "unreasonably interfered with his work performance." There was no evidence produced to show that the conduct was so extreme as to amount to a change in the conditions of his employment. "Although this court abhors the challenged remarks and believes them demeaning * * *, they appeared to be isolated and to have had no impact on [the employee's] job." Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378.
 {¶ 37} The second assignment of error is overruled.
Judgment affirmed.
McMonagle, J. Concurs;
 Gallagher, J. Dissents (see separate dissenting opinion)